**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANGELINA ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-2689** |
| | ) | |
| **HASKELL INDIAN NATIONS UNIVERSITY,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **the UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SALLY JEWELL, in her official capacity, as** | ) | |
| **U.S. SECRETARY OF THE DEPTARMENT** | ) | |
| **OF THE INTERIOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT WITH JURY DEMAND

Comes Now Plaintiff Angelina Adams, and for her causes of action against Defendants Haskell Indian Nations University, the United States of America, and Sally Jewel, in her official capacity as Secretary of the U.S. Department of the Interior, states as follows:

### Jurisdiction and Venue

1.      Plaintiff alleges violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a).

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper with this Court pursuant to the provisions of 28 U.S.C. §1391(b) as the acts alleged in this Complaint were committed within this Judicial District.

**Parties**

4.     Plaintiff Angelina Adams, (hereinafter "Adams"), who currently resides in Douglas County, Kansas, was at all relevant times a student counselor employed by Haskell Indian Nations University.

5.     Defendant Haskell Indian Nations University (hereinafter "HINU"), is located in Douglas County, Kansas. HINU is a recipient of federal financial assistance and is operated by Defendant United States of America's Department of Interior (hereinafter "USA"). HINU's administrative office is located at 155 E. Indian Ave, Lawrence, KS 66046.  HINU may be served via Certified Mail to the civil process clerk at the office of the United States attorney for the district in which the action is brought (Tom Beall, U.S. Attorney's Office, 500 State Ave., Suite 630, Kansas City, KS   66101) and to the Attorney General of the United States at Washington, D.C. (The Office of the Attorney General, 950 Pennsylvania, NW, Washington, D.C. 20530). In addition, a copy will be sent via Certified Mail to HINU.

6.     Defendant USA operates HINU by and through the U.S. Department of the Interior. Defendant USA may be served in the same manner as Defendant HINU.

7.     Sally Jewell, U.S. Secretary of the Department of Interior, is sued in her official capacity. Defendant Jewell may be served in the same manner as Defendant HINU, with the addition of service via certified mail upon Defendant Jewell, at Secretary Sally Jewel, 1949 C Street, N.W., Washington, D.C. 20240.

**Background Facts**

8.     Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The following pleaded facts are not exhaustive; they are selected

for inclusion in this complaint with the aim of making this complaint "short and plain" yet detailed enough to show that her claim is plausible under Title IX.

9.      Plaintiff Adams began her employment with HINU in August of 2004 as a counselor; her duties included providing personal and social counseling to students as they adjusted to college.

10.     Plaintiff Adams regularly received favorable performance reviews and merit increases.

11.     Defendants appointed Venida Chenault as the President of HINU in January of 2014. She had formerly worked with Defendants at HINU since December of 2004 as a vice president of academic affairs and had served as acting president of the school at times.

12.     In 2008, President Chenault's son, Joshua Arce, was hired as Chief Information Officer for HINU. In January of 2016 he was appointed to serve also as Dean of Students, overseeing student rights, conduct, housing and counseling services. At this time, he became one of Plaintiff's supervisors.

13.     Tonia Salvini was vice-president of university services and also Plaintiff's supervisor.

14.     Danelle McKinney, director of student life/rights, was employed by Defendants to investigate Title IX complaints.

15.     In November of 2014, HINU student Jane Doe was sexually assaulted by two male HINU football players at a HINU dormitory.

16.     Plaintiff Adams was the counselor on call when the assaults occurred, so she was assigned to assist Jane Doe in the aftermath of the assaults. Adams assisted in coordinating support services for Jane Doe, sought academic accommodations for Jane Doe, advised her of

her student rights, including Title IX rights, and generally counseled Jane Doe at HINU while the criminal trials against Jane Doe's two assailants were delayed three times.

17.     In March 21, 2016, Plaintiff assisted Jane Doe in requesting from HINU an extension to withdraw academically from HINU for Spring of 2016 and permission to re-enroll in summer school 2016.

18.     On March 31, 2016, Jane Doe was involved in a dispute with a male HINU student at a HINU dormitory in which the male student left bruises on Jane Doe's arms. Plaintiff photographed the bruises and met with Jane Doe at a medical facility. Plaintiff also discovered text messages from the male HINU student indicating that HINU was pressuring him to press charges against Jane Doe and to file a Title IX complaint against her. Plaintiff provided the photographs and text messages to HINU administrators.

19.     HINU administrators encouraged the male HINU student to file a baseless Title IX complaint against Jane Doe.

20.      On April 1, 2016, HINU administrators faxed Jane Doe a "no contact" order while she remained at the medical facility; Plaintiff had urged Defendants to wait to do that until Jane Doe was out of the facility.

21.     According to HINU's Standard Operating Procedures for Sexual Violence and Abuse, Sex Discrimination and Sexual Harassment then in effect, Jane Doe had the "right to due process. Every student is entitled to due process in every instance of disciplinary action for alleged violation of school regulations for which the student may be subjected to sanctions of suspension, expulsion, or transfer."

22.     Those same due process rights included:

    a.   Written notice of charges within a reasonable time before a hearing.

    b.   A fair and impartial hearing before the imposition of disciplinary action.

    c.   The right to representation.

    d.   The right to produce witnesses and to examine witnesses.

    e.   The right to a record of proceedings.

    f.   The right to administrative review and appeal.

    g.   The right to expunge misconduct allegations if found not guilty.

23.    The same due process rights provide that HINU may only temporarily suspend a student if they believe the student poses a danger to other students.

24.    On the afternoon of April 1, 2016, Plaintiff was instructed to attend a meeting with administrators Salvini and McKinney about Jane Doe. At the meeting, Plaintiff learned that HINU had decided to expel Jane Doe for "hitting" the male HINU student. HINU administrators instructed Plaintiff not to speak about Jane Doe with anyone outside of HINU. Plaintiff protested the decision and stated that Jane Doe should be allowed to contest the decision and that there was evidence that she was the victim.

25.    On or about April 2, 2016, Plaintiff asked a HINU administrator to allow for a medical withdrawal for Jane Doe, as opposed to simply giving her failing grades.

26.    On or about April 3, 2016, HINU instructed Plaintiff to have no more contact with Jane Doe.

27.    On or about April 18, 2016, HINU removed Plaintiff from her counseling position and changed her job duties to "special projects," instructing her to stop seeing students. They also removed her from "on-call" duties that provided a regular opportunity for time-and-a-half compensation.

28.     On May 2, 2016, Joshua Arce met with Plaintiff and accused her of conspiring with HINU disabilities coordinator, Jane Doe's instructors, and the college residential advisors to accommodate Jane Doe's academic absences during the pendency of the two criminal cases against the two HINU football players; that she conspired to prevent the male HINU student from playing basketball for HINU; and that she moved Jane Doe into her home, all in support of Jane Doe. None of these accusations were true.

29.     He then placed her on non-work/non-pay status, which resulted in loss of customary wages Plaintiff would have earned in the summer months.

30.     In June of 2016, the first criminal trial against the first HINU football player who assaulted Jane Doe occurred. Upon information and belief, during that trial, HINU administrators provided the criminal attorney for Jane Doe's assailant with copies of Jane Doe's education and medical records without being compelled by a subpoena.

31.     On July 19, 2016, Plaintiff was subpoenaed by the defense counsel representing the second HINU football player charged with raping Jane Doe and commanded to produce Jane Doe's HINU counseling records. Plaintiff promptly notified HINU and asked for representation, but HINU did not provide any counsel and instructed Plaintiff that nothing precluded her from turning over the records if she redacted them.

32.     Plaintiff was forced to hire private counsel in order to convince Joshua Arce to provide her representation and take steps to protect private student records as HINU was required to under the law.

33.     On or about August 11, 2016, Joshua Arce met with Plaintiff and changed her position to career counselor; told her that several students had complained about her and spoke sarcastically to her. He told her she had no right to representation at the meeting.

34.     Plaintiff was thereafter given very limited work to perform.

35.     None of Plaintiff's job duties included Title IX compliance or investigation; her defense of Jane Doe's Title IX rights necessitated her to step beyond her customary daily job duties of helping students adjust to college life at HINU.

36.     Defendants' decision to change Plaintiff's duties, remove her from student contact, deny her customary summer employment, change her job position, expose her to liability in the unlawful disclosure of student records, berate, harass and humiliate her was motivated by a retaliatory animus stemming from Plaintiff's advocacy for Jane Doe following Jane Doe's rapes and her expulsion.

37.     In the days separating Plaintiff's objection to Defendants' expulsion of Jane Doe and Defendants' decision to change her job duties, Defendants engaged in the following conduct showing Plaintiff's protected activity motivated their adverse actions:

   a. Defendants issued a gag order on her preventing her from discussing Jane Doe's case with Jane Doe's social support services.

   b. Defendants removed her from all student contact.

   c. Defendants leveled numerous, demonstrably unfounded allegations against her under the guise of performing an "investigation" into the baseless Title IX complaint Defendants caused to be filed against Jane Doe.

   d. Prior to Joshua Arce's appointment to Dean of Students, Plaintiff had only received positive feedback regarding the performance of her job duties in general and with respect to Jane Doe's case in particular.

   e. Joshua Arce told Plaintiff that she was being removed from student conduct because of her advocacy for Jane Doe following her rapes and in the face of

Defendants' unfounded Title IX complaint against Jane Doe and denial of her due process rights.

f.   While Plaintiff was attempting to challenge these adverse employment actions, Defendants hired Plaintiff's union representative's wife to replace her as counselor.

g.   Defendants conducted an "investigation" into Plaintiff searching for any reason they could find to accuse her of misconduct during her advocacy for Jane Doe, but they never found any.

h.   Defendants failed to follow their own policies in providing Jane Doe due process following the baseless Title IX complaint filed against her at the urging of Defendants.

i.   Defendants failed to follow their own policies and regulations in changing Plaintiff's job duties and positions immediately following Plaintiff's objection to the way Defendants were treating Jane Doe, including failing to provide the proper written notification.

j.   The same actors involved in overseeing Plaintiff's advocacy in support of Jane Doe's Title IX rights were the same actors involved in taking adverse actions against her.

38.   Therefore, Plaintiff was subjected to retaliation as a consequence of her advocacy in support of Jane Doe's Title IX protections.

39.   Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered, and continues to suffer damage to her reputation, with attendant

emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling as well as other economic hardships; and has incurred attorneys fees and costs in defending her rights.

## <u>COUNT I</u>
### (Liability under Title IX for Retaliation)

40.     Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

41.     The Supreme Court has recognized a cause of action for Title IX retaliation in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005).

42.     Title IX "does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." *Jackson*, 544 U.S. at 179.

43.     Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 and its implementing regulation 34 C.F.R Part 106 prohibit discrimination based on sex and prohibit retaliation against any individual who has made a complaint, testified, or participated in any manner in an investigation into alleged noncompliance with Title IX. *See* 34 C.F.R. § 100.7(e).

44.     In its guidance to colleges and universities, the United States Department of Education, Office for Civil Rights sends a "Dear Colleague" letter to institutions such as HINU. In its April 24, 2015 Dear Colleague letter, the Department of Education reminded recipients that retaliation under Title IX is unlawful:

> Title IX makes it unlawful to retaliate against individuals… not just when they file a complaint alleging a violation of Title IX, but also when they participate in a Title IX investigation, hearing, or proceeding, or advocate for others' Title IX rights. Title IX's broad antiretaliation provision protects [University employees] from discrimination, intimidation, threats, and coercion for the purpose of interfering with the performance of their job responsibilities.

http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201504-title-ix-coordinators.pdf

45.     In 2014 Defendants assigned Plaintiff to serve as Jane Doe's counselor and assisted her as she coped with the extreme psychological demands placed upon her after she was raped by two HINU students at a HINU dorm.

46.     Those duties includes supporting Jane Doe as the young woman made her way through the complex criminal-justice system into which she had been forced after reporting her two rapes by HINU students.

47.     Plaintiff engaged in protected activity when she:

    a.  Provided support to Jane Doe between 2014 and 2016 as Jane Doe coped with the aftermath of the HINU rapes.

    b.  Spoke out against Defendants' unlawful decision to expel her without due process on unfounded allegations and in violation of Defendants' own policies.

    c.  Offered evidence that the allegation against Jane Doe was unfounded and motivated by Defendants' desire to get rid of Jane Doe.

    d.  Demanded that Defendants not surrender Jane Doe's records to the criminal defense attorneys in the criminal trial of the second HINU assailant.

48.     Plaintiff was entitled to engage in this protective activity.

49.     Plaintiff was likewise entitled to the protection against retaliation for engaging in this protected activity and advocacy on behalf of Jane Doe.

50.     Employees of federally funded educational institutions who raise complaints, or participate in investigations, concerning compliance with the substantive provisions of Title IX are protected from retaliation by 34 C.F.R. § 100.7(e) and enjoy an implied private right of action for money damages to vindicate their rights.

51.     Defendants's officers with authority to stop the retaliation had actual knowledge that Jane Doe had suffered sexual assaults at HINU in 2014 and that they had told Plaintiff to help Jane Doe.

52.     Defendants' officers with authority to stop the retaliation had actual knowledge that their own Title IX policies required providing assistant to Jane Doe, and, at minimum, providing her due process before expelling her.

53.     Defendants' officers with authority to stop the retaliation had actual knowledge that they should not have handed over Jane Doe's federally-protected educational and medical records to a criminal defense attorney representing one of Jane Doe's assailants – without so much as a subpoena.

54.     Defendants' officers with authority to stop the retaliation had actual knowledge that Plaintiff was attempting to assist Jane Doe, was attempting to help Defendants comply with their own Title IX policies, and was attempting to stop Defendants from blindly violating Jane Doe's privacy rights a second time by handing over her protected records to a second criminal defense attorney in the trial of the second assailant.

55.     Defendants exhibited deliberate indifference to Plaintiff's rights under Title IX to be protected from retaliation.

56.     Defendants retaliated against Plaintiff when they abruptly changed her job duties, denied her over-time opportunities, denied her summer hours, deprived her of leave, leveled unfounded accusations against her, forced her to retain a private attorney to defend Defendants' interests in court, and ended her contact with students.

57.     Defendants' officers with power to put a stop to the retaliation had actual knowledge of the retaliation and were either deliberately indifferent to it or actively endorsed it.

58.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, attorneys fees and costs.

59.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has sustained or will sustain expenses for psychological treatment, therapy and counseling as well as other economic hardships.

60.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff will sustain damages for lost pay and benefits.

61.     Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being, justifying the imposition of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court conduct a jury trial on her claims, enter judgment in her favor in an amount above the jurisdictional amount and against Defendants, grant such declaratory and injunctive relief as is necessary and appropriate to remedy the wrongs alleged herein; award Plaintiff actual damages, compensatory damages, punitive damages, reasonable attorneys' fees and expenses; and grant such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable by law.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial for this matter.

Respectfully submitted,

BROWN & CURRY, LLC


/s/Dan Curry
Sarah Brown, KS #12130
Dan Curry, KS #22750
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF